## A. FARBER AND PARTNERS, INC.

### v.

### Maynard Hal GARBER, et al.

### No. CV 05–2776–JFW(RCx).

United States District Court,
C.D. California.

Feb. 15, 2006.

Gary A. Pemberton, Evan W. Granowitz, Shulman Hodges & Bastian, Foothill Ranch, CA, for the plaintiff.

James D. Henderson, Jr., Santa Monica, CA, Thomas J. Weiss, Hyrum K. Hunt, Law Offices of Thomas J. Weiss, Los Angeles, CA, for Defendant.

**PROCEEDINGS: ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL SUPPLEMENTAL RESPONSES TO ITS FIRST SET OF REQUESTS PROPOUNDED ON MAYNARD HAL GARBER AND FOR AN AWARD OF ATTORNEY'S FEES**

CHAPMAN, United States Magistrate Judge.

On January 23, 2006, plaintiff filed a motion to compel supplemental responses to its first set of requests propounded on Maynard Hal Garber and for an award of attorney's fees of not less than $15,000.00, a joint stipulation in support of the motion, and the declaration of Evan W. Granowitz, with exhibits. On February 1, 2006, plaintiff filed a supplemental memorandum of law and the supplemental declaration of Evan W. Granowitz, with exhibits, and on February 7, 2006, plaintiff filed a second supplemental declaration of Evan W. Granowitz, with exhibits.

Oral argument was held before Magistrate Judge Rosalyn M. Chapman on February 15, 2006. Ronald S. Hodges, Gary A. Pemberton and Evan W. Granowitz, attorneys-at-law with the firm Shulman Hodges & Bastian, appeared on behalf of plaintiff and Thomas J. Weiss and Hyrum K. Hunt, attorneys-at-law, and James D. Henderson, Jr., attorney-at-law, appeared on behalf of Garber defendants.

## BACKGROUND

The nature of this litigation is detailed in the Order denying Garber defendants' motion for security costs issued contemporaneously with this Order, and need not be repeated here.

## DISCUSSION

### I

Rule 26(b)(1) permits discovery in civil actions of "any matter, not privileged, that is relevant to the claim or defense of any party...." Fed.R.Civ.P. 26(b)(1). " 'Generally, the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute.' " *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 635–36 (C.D.Cal. 2005) (quoting *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D.Cal.1998)). "Toward this end, Rule 26(b) is liberally interpreted to permit wide-ranging discovery of information even though the information may not be admissible at the trial." *Id.* (citing *Jones v. Commander, Kansas Army Ammunitions Plant*, 147 F.R.D. 248, 250 (D.Kan.1993)). All discovery, and federal litigation generally, is subject to Rule 1, which directs that the rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action." Fed.R.Civ.P. 1; *Moon*, 232 F.R.D. at 635–36.

Rule 34 is one of the discovery tools available to litigants in the federal courts. *Keith H. v. Long Beach Unified School Dist.*, 228 F.R.D. 652, 655 (C.D.Cal.2005). It broadly provides that "[a]ny party may serve on any other party a request ... to produce ... any designated documents ... which are in the possession, custody, or control of the party upon whom the request is served[.]" Fed. R.Civ.P. 34(a).

Here, plaintiff's motion to compel seeks supplemental responses to plaintiff's first set of requests for production of documents, requests nos. 1–194 (except request no. 188), addressed to defendant Maynard Hal Garber. Defendant Garber made boilerplate objections to almost every single request for production, including broad relevancy objections, objections of "overly burdensome and harassing," "assumes facts not in evidence," privacy, and attorney-client privilege/work product protection.

■ As an initial matter, general or boilerplate objections such as "overly burdensome and harassing" are improper—especially when a party fails to submit any evidentiary declarations supporting such objections. *Paulsen v. Case Corp.*, 168 F.R.D. 285, 289 (C.D.Cal.1996); *see also McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir.1990) (objections that document requests were overly broad, burdensome, oppressive, and irrelevant were insufficient to meet objecting party's burden of explaining why discovery requests were objectionable); *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir.1985) (conclusory recitations of expense and burdensomeness are not sufficiently specific to demonstrate why requested discovery is objectionable).[1] Similarly, boilerplate relevancy objections, without setting forth any explanation or argument why the requested documents are not relevant, are improper. "Relevant information for purposes of discovery is information 'reasonably calculated to lead to the discovery of admissible evidence.' " *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir.2005) (citation omitted). Here, most of the document requests seek information related to defendant Garber's various and numerous identities and business enterprises; thus, under Rule 26(b)(1), these requests are clearly relevant to plaintiff's civil RICO claims and pendant state law claims.

---

1. The only basis defendant Garber cites to support his numerous "overly burdensome and harassing" objections is that many of plaintiff's document requests seek information "relating to" a subject. However, while a document request seeking information "relating to" a certain subject may be overbroad or overly burdensome, *see*, e.g., *Cotracom Commodity Trading Co. v.*

*Seaboard Corp.*, 189 F.R.D. 655, 665 (D.Kan. 1999), it is not necessarily so. *See*, e.g., *United States v. Brooks*, 163 F.R.D. 601, 606 (D.Or. 1995). Therefore, defendant Garber's bald, boilerplate assertion that plaintiff's document requests are overly burdensome and harassing merely because they seek information "relating to" a subject is without merit.

## II

The Court, rather than discussing separately each document request and defendant Garber's objections, prefers to address several broad issues raised by plaintiff in its motion and the joint stipulation:

(1) whether defendant Garber has conducted a reasonable search to discover all documents in his possession, custody or control, and has produced all responsive documents;

(2) whether defendant Garber has obtained documents from certain nonparties, including communications companies Nextel and Pacific Bell, financial institutions Elka Bank, Bank Hapoalim, Financorp and First Bank of Omaha, and governmental entities Internal Revenue Service and the California Franchise Tax Board, or should be required to consent to the release of his records from such nonparties and other nonparties that might have responsive documents;

(3) whether defendant Garber's privacy claims of attorney-client privilege/work product protection and right to privacy apply to his financial documents;

(4) whether the crime-fraud exception applies to defendant Garber's claim of attorney-client privilege regarding all communications between him and co-defendant Ricardo Rojas;

(5) whether defendant Garber has waived all claims of privilege by failing to timely provide a privilege log or detailed information to evaluate his privilege claims;

(6) whether defendant Garber has failed to preserve evidence and destroyed evidence that would be responsive to some of the production requests; and

(7) whether plaintiff is entitled to attorney's fees in an amount not less than $15,000.00.

### 1 & 2. Search for documents:

█ Under Rule 34, a party must produce or permit inspection of documents responsive to a request for production of documents when such documents are in the party's "possession, custody or control." "[F]ederal courts have consistently held that documents are deemed to be within [a party's] 'possession, custody or control' for purposes of Rule 34 if the party has actual possession, custody, or control, **or has the legal right to obtain the documents on demand.**" *In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir.1995) (emphasis added), *cert. dismissed,* 517 U.S. 1205, 116 S.Ct. 1711, 134 L.Ed.2d 808 (1996); *see also United States v. Int'l Union of Petroleum and Indus., Workers, AFL–CIO,* 870 F.2d 1450, 1452 (9th Cir.1989) ("Control is defined as the legal right to obtain documents upon demand."). Accordingly, a party has an obligation to conduct a reasonably inquiry into the factual basis of his responses to discovery, *National Ass'n of Radiation Survivors v. Turnage,* 115 F.R.D. 543, 554–56 (N.D.Cal.1987), and, based on that inquiry, "[a] party responding to a Rule 34 production request ... 'is under an affirmative duty to seek that information reasonably available to [it] from [its] employees, agents, or others subject to [its] control.'" *Gray v. Faulkner,* 148 F.R.D. 220, 223 (N.D.Ind.1992) (citation omitted).

█ Here, defendant Garber, in response to plaintiff's numerous requests for production of documents, has produced approximately 666 pages of documents to plaintiff. Declaration of Evan W. Granowitz, ¶ 5. The paucity of defendant Garber's response to almost 200 document requests is astounding! Moreover, defendant Garber has produced none of his records from the several telecommunications companies, financial institutions, and governmental entities with which he, his various business enterprises, and his counsel have dealings. In light of the nature of plaintiff's claims, and the paltry number of documents defendant Garber has produced to plaintiff, it is clear that defendant Garber has not conducted a reasonable inquiry into the factual basis of his responses to plaintiff's requests and has not produced to plaintiff all documents in his "possession, custody or control."[2] Thus, the Court will require

**2.** However, if defendant Garber contends he has provided plaintiff with all documents responsive to a particular discovery request, he may submit a declaration **under oath**, similar to a Rule 26(g) verification, as to each specific request he contends he has fully responded to.

defendant Garber to conduct a "reasonable inquiry," as described in *National Ass'n of Radiation Survivors*, and make a supplemental production of documents to plaintiff. *See National Ass'n of Radiation Survivors*, 115 F.R.D. at 554–56 ("[A] reasonable inquiry into the factual basis of [a party's] discovery responses ... require[s], at a minimum, a reasonable procedure to distribute discovery requests to all employees and agents of the [party] potentially possessing responsive information, and to account for the collection and subsequent production of the information to [the opposing party]."). Further, to assure that defendant Garber actually makes a "reasonable inquiry," the Court will order him to provide plaintiff with declarations or affidavits detailing the nature of his "reasonable inquiry" to locate responsive documents, and such declarations must address the inquiry he made on a request-by-request basis.

Moreover, if defendant Garber fails to make a "reasonable inquiry" to locate responsive documents, or fails to provide plaintiff with the necessary declarations or affidavits evidencing this "reasonable inquiry," the Court will order defendant Garber, at a minimum, to sign consents to release his documents from various nonparties so plaintiff can expeditiously obtain those documents. *See, e.g., Rodriguez v. IBP, Inc.*, 243 F.3d 1221, 1230 (10th Cir.) ("Throughout this litigation, [plaintiff] has ignored his responsibility to turn over information.... In light of [plaintiff's] failure to comply with his continuing duty to disclose under Rule 26(e)(2) ..., this court concludes the district court did not abuse its discretion in ordering [plaintiff] to provide a signed release for his records." (footnote omitted)), *cert. denied*, 534 U.S. 1055, 122 S.Ct. 645, 151 L.Ed.2d 563 (2001); *United States ex rel. Woodard v. Tynan*, 776 F.2d 250, 252 (10th Cir.1985) (en banc) ("Federal district courts have ordered defendants to request release of their records from other parties maintaining custody of them so that the defendants could comply with discovery obligations in federal civil proceedings. We hold that such an order is within the power of the federal district court

and is appropriate in the instant case." (citations omitted)); *Preservation Prods., LLC v. Nutraceutical Clinical Labs., Int'l, Inc.*, 214 F.R.D. 494, 496 (N.D.Ill.2003) ("The fact that [defendant] does not currently have copies in his possession is not significant because he has 'control' of those documents by signing the necessary request form."); *Powell v. Merrimack Mut. Fire Ins. Co.*, 80 F.R.D. 431, 433 (N.D.Ga.1978) (ordering plaintiff to sign Internal Revenue Service ("IRS") form granting defendant access to plaintiff's IRS records); *Karlsson v. Wolfson*, 18 F.R.D. 474, 476–77 (D.Minn.1956) (ordering party to provide opponent with signed authorization for release of tax returns in custody of federal, state, municipal, and foreign entities if documents were not in party's possession); *Paramount Film Distrib. Corp. v. Ram*, 91 F.Supp. 778, 781–82 (E.D.S.C.1950) (ordering defendants to produce tax returns and bank records in custody of governmental agencies, banks, and third parties or, if not in defendant's possession, to authorize plaintiffs' attorneys access to such documents).

### 3, 4 & 5. Privileges:

Questions of evidentiary privilege arising in the course of the adjudication of federal rights are governed by the principles of federal common law. *United States v. Zolin*, 491 U.S. 554, 562, 109 S.Ct. 2619, 2625, 105 L.Ed.2d 469 (1989); Fed.R.Evid. 501. This is true even where, as here, a complaint contains both federal and pendent state law claims. *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 n. 10 (9th Cir.1992).

#### A. Privacy:

Defendant Garber raises privacy objections to document request nos. 86, 95, 106, 110–11, 113, 153–60, and 191, which seek documents—primarily bank records—regarding financial transactions and data involving defendant Garber and/or related entities.

▮▮▮ Initially, defendant Garber has declined to produce any tax-related documents. *See* Granowitz Decl., ¶ 4.[3] Tax returns and

---

**3.** Plaintiff also states that, other than "documents relating to paying taxes and tax liens,"

defendant "Garber's counsel agreed to produce all financial documents responsive to Plaintiff's

related documents "do not enjoy an absolute privilege from discovery." *Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir.1975); *Heathman v. United States Dist. Ct. for the Central Dist. of Cal.*, 503 F.2d 1032, 1035 (9th Cir.1974). "Nevertheless, a public policy against unnecessary public disclosure arises from the need, if the tax laws are to function properly, to encourage taxpayers to file complete and accurate returns." *Premium Serv. Corp.*, 511 F.2d at 229; *Aliotti v. The Vessel SENORA*, 217 F.R.D. 496, 497 (N.D.Cal.2003). Courts generally apply:

> a two-pronged test to assure a balance between the liberal scope of discovery and the policy favoring the confidentiality of tax returns. "First, the court must find that the returns are relevant to the subject matter of the action. Second, the court must find that there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable."

*Hilt v. SFC, Inc.*, 170 F.R.D. 182, 189 (D.Kan.1997) (citation omitted); *Aliotti*, 217 F.R.D. at 497–98. "'The party seeking production has the burden of showing relevancy, and once that burden is met, the burden shifts to the party opposing production to show that other sources exist from which the information is readily obtainable.'" *Hilt*, 170 F.R.D. at 189 (citation omitted); *Terwilliger v. York Int'l Corp.*, 176 F.R.D. 214, 217 (W.D.Va.1997).

▪ Here, plaintiff has met its burden of showing the information sought is relevant, especially to plaintiff's civil RICO claims. *See*, e.g., *State Farm Mut. Ins. Co. v. CPT Med. Servs., P.C.*, 375 F.Supp.2d 141, 156 (E.D.N.Y.2005) (financial records, including tax returns, relevant in civil RICO action); *U.S. v. Bonanno Organized Crime Family of La Cosa Nostra*, 119 F.R.D. 625, 627 (E.D.N.Y.1988) (tax returns "clearly rele-

vant" in civil RICO litigation). On the other hand, defendant Garber has not shown, or even attempted to show, the information sought is available from other sources. *Cotracom Commodity Trading Co.*, 189 F.R.D. at 665; *Bonanno Organized Crime Family of La Cosa Nostra*, 119 F.R.D. at 627. Therefore, defendant Garber's tax returns and related documents are discoverable in this action, subject to an appropriate protective order as discussed herein.

Although there is no federal common law privilege akin to the right of privacy, "'[f]ederal courts ordinarily recognize a constitutionally-based right of privacy that can be raised in response to discovery requests.'" *Keith H.*, 228 F.R.D. at 657 (citations omitted); *Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1497 (10th Cir.1992), *cert. denied*, 507 U.S. 910, 113 S.Ct. 1255, 122 L.Ed.2d 654 (1993). "Resolution of a privacy objection ... requires a balancing of the need for the information sought against the privacy right asserted." *Keith H.*, 228 F.R.D. at 657; *Johnson by Johnson*, 971 F.2d at 1497.

Here, plaintiff's need for defendant Garber's financial documents outweighs defendant Garber's claim of privacy, especially when the "impact" of the disclosure of the information can be protected by a "carefully drafted" protective order.[4] *See In re Heritage Bond Litigation*, 2004 WL 1970058, *5 n. 12 (C.D.Cal.) ("Any privacy concerns Kasirer defendants have in their bank records and related financial statements are adequately protected by the protective order, and are not sufficient to prevent production in this matter."); *CEH, Inc. v. FV "Seafarer"*, 153 F.R.D. 491, 499 (D.R.I.1994) ("While a party does have an interest in nondisclosure and confidentiality of its financial records, this interest can be adequately protected by a protective order."); *In re Yassai*, 225 B.R. 478, 483 (Bankr.C.D.Cal.1998) ("[W]hatever right to privacy Movants may have in

---

first set of requests for production, which had originally been withheld on the ground of privacy ... in exchange for Plaintiff's stipulation to a protective order that contained an attorneys' eyes only provisions as negotiated by the parties." *See* Granowitz Decl., ¶ 4. Nevertheless, despite an agreement between the parties, defendant Garber has never turned over agreed upon docu-

ments to plaintiff. Therefore, the Court addresses defendant Garber's privacy objections.

4. This finding applies to financial records generated by defendant Garber's accountants, as well as records from financial institutions, and financial records of business entities owned by defendant Garber.

the [financial] information sought pursuant to the subpoenas is insufficient to prevent discovery of that information.... Additionally, assuming that a state constitution creates 'a right to privacy in financial records, such state privilege[ ] do[es] not preclude discovery' of bank records 'in a federal court suit.' " (citations omitted)). Plaintiff has proposed a two-tier protective order to protect defendant Garber's private financial information, Granowitz Decl., ¶ 4, Exh. A, and defendant Garber must produce these records to plaintiff subject to the protective order.

### B. Attorney–Client Privilege and Work Product Doctrine:

Defendant Garber has objected to document request nos. 10, 20–27, 47, and 193 on attorney-client privilege and work product doctrine grounds.

Not all communications between an attorney and his client are privileged. Rather, only "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance are privileged." *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976); *Clarke v. American Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir.1992). To show the applicability of the attorney-client privilege, a claimant must show the following eight essential elements: " '(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.' " *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n. 2 (9th Cir.1992); *United States v. Martin*, 278 F.3d 988, 999 (9th Cir.2002). Because the attorney-client privilege is in derogation of the search for truth, it is "narrowly and strictly construed." *United States v. Gray*, 876 F.2d 1411, 1415 (9th Cir.1989), *cert. denied*, 495 U.S. 930, 110 S.Ct. 2168, 109 L.Ed.2d 497 (1990); *see also Fisher*, 425 U.S. at 403, 96 S.Ct. at 1569 (holding since attorney-client privilege "has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose"). Moreover, "[t]he burden is on the party asserting the privilege to establish all the elements of the privilege[,]" *Martin*, 278 F.3d at 999–1000; *United States v. Blackman*, 72 F.3d 1418, 1423 (9th Cir. 1995), *cert. denied*, 519 U.S. 911, 117 S.Ct. 275, 136 L.Ed.2d 198 (1996), and an assertion of a privilege without evidence to support it will not prevail. *Hollins v. Powell*, 773 F.2d 191, 196 (8th Cir.1985), *cert. denied*, 475 U.S. 1119, 106 S.Ct. 1635, 90 L.Ed.2d 181 (1986); *see also Saxholm AS v. Dynal, Inc.*, 164 F.R.D. 331, 333 (E.D.N.Y.1996) (Meeting the burden of establishing the applicability of the attorney-client privilege "requires the submission of affidavits or other competent evidence to establish sufficient facts to prove the applicability of the privilege. Conclusory or ipse dixit assertions are not enough." (citations omitted)).

Under the work product doctrine, material obtained and prepared by an attorney or the attorney's agent in anticipation of litigation or preparation for trial may be immune from discovery. Fed.R.Civ.P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 509–12, 67 S.Ct. 385, 392–94, 91 L.Ed. 451 (1947). One of the primary purposes of the work product doctrine is to prevent one party exploiting the other party's efforts to prepare for litigation. *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 576 (9th Cir.1992); *Admiral Ins. Co. v. United States Dist. Court*, 881 F.2d 1486, 1494 (9th Cir.1989). The work product doctrine establishes a qualified immunity, rather than a privilege, and the qualification of the immunity is to be determined upon a showing of necessity or good cause. *Admiral Ins. Co.*, 881 F.2d at 1494; *Doubleday v. Ruh*, 149 F.R.D. 601, 605 n. 3 (E.D.Cal.1993). The party claiming work product immunity has the burden of proving the applicability of the doctrine. *United States v. City of Torrance*, 163 F.R.D. 590, 593 (C.D.Cal.1995); *Nutmeg Ins. Co. v. Atwell, Vogel & Sterling*, 120 F.R.D. 504, 510 (W.D.La.1988); *see also Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.*, 215 F.R.D. 466, 475 (S.D.N.Y.2003) (holding declaration or affidavit must support work product claim for documents listed solely as work product on privilege log); *Hildebrand v.*

*Wal–Mart Stores, Inc.,* 194 F.R.D. 432, 434–35 (D.Conn.2000) (same).

On December 13, 2005, defendant Garber produced a privilege log identifying documents he claims are privileged under the attorney-client privilege and/or the work product doctrine. Joint Stip., Exh. 3. However, the privilege log lists only five documents, and the descriptions of the documents on the privilege log are sketchy and incomplete, to say the least.[5] In fact, the Court is shocked at the sparsity of the number of documents on the privilege log in light of defendant Garber's utilization of numerous attorneys to establish his various business enterprises and conduct his businesses, and his ongoing relationship with co-defendant Rojas, who has acted as his counsel and agent in dealing with various other individuals. Thus, it is clear to the Court that the privilege log submitted by defendant Garber is incomplete. Further, and just as important, defendant Garber has failed to provide declarations supporting his claims of attorney-client privilege and/or work product protection for the few documents listed on the privilege log, as required. Furthermore, plaintiff alleges the privilege log was due no later than October 11, 2005, and is therefore untimely. Joint Stip. at 35:22–28.

In light of defendant Garber's failings, plaintiff argues defendant Garber has waived any attorney-client privilege that might attach to the documents on the privilege log. Alternatively, plaintiff argues that the documents on the privilege log should be produced to it under the crime or fraud exception to the attorney-client privilege because the relationship between defendant Garber and his attorney, co-defendant Rojas, was in furtherance of fraud upon the investors in Damji's schemes and part of defendant Garber's money laundering activities.[6] However, since the Court is requiring defendant Garber to conduct a reasonable inquiry to supplement his production of documents to plaintiff, the Court will also afford defendant Garber the opportunity to supplement his privilege claims by further describing the five documents on the log, supporting his claims of attorney-client privilege and work product protection for those documents, and adding any new documents he discovers to the privilege log. Thus, the Court will not, at this time, determine whether defendant Garber has waived his attorney-client privilege or whether the crime-fraud exception applies.

### 6. Preserve documents:

 There is no doubt that a litigant has a duty to preserve evidence it knows or should know is relevant to imminent litigation, *Dillon v. Nissan Motor Co., Ltd.,* 986 F.2d 263, 267 (8th Cir.1993); *see also Silvestri v. General Motors Corp.,* 271 F.3d 583, 591 (4th Cir.2001) ("The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to

---

5. The Court finds that Model Form 11:A, set forth in The Rutter Group Practice Guide, *Federal Civil Procedure Before Trial,* correctly and adequately lists all the information that should be set forth on the privilege log, including the title or position of the author and recipient of the document. *See In re Grand Jury Investigation,* 974 F.2d at 1071; *Dole v. Milonas,* 889 F.2d 885, 888 n. 3 (9th Cir.1989). In addition to the information on Model Form 11:A, the Court will require that the Bates number of the document be placed in parenthesis next to the log number. This should assist a party in determining whether a document has been withheld without proper reason.

6. "When a lawyer's advice is sought to further a crime or fraud, those communications are not privileged." *Martin,* 278 F.3d at 1001 (9th Cir. 2002); *Zolin,* 491 U.S. at 562–63, 109 S.Ct. at 2626; *see also In re Grand Jury Proceedings,* 87 F.3d 377, 381 (9th Cir.) ("The protection afforded by the attorney-client privilege does not extend to any communication 'in furtherance of intended, or present, continuing illegality.'" (citation omitted)), *cert. denied sub nom., Corporation v. United States,* 519 U.S. 945, 117 S.Ct. 333, 136 L.Ed.2d 246 (1996). The crime or fraud exception is applicable to civil cases. *See, e.g., In re BankAmerica Corp. Sec. Litigation,* 270 F.3d 639, 641–44 (8th Cir.2001); *Cox,* 17 F.3d at 1422. "The crime-fraud exception may be used to abrogate work product protection as well as the attorney-client privilege." *In re National Mortgage Equity Corp. Mortgage Pool Certificates Litigation,* 116 F.R.D. 297, 301 (C.D.Cal.1987); *Cox v. Adm'r United States Steel & Carnegie,* 17 F.3d 1386, 1422 (11th Cir.1994), *amended by,* 30 F.3d 1347 (11th Cir.1994), *cert. denied,* 513 U.S. 1110, 115 S.Ct. 900, 130 L.Ed.2d 784 (1995).

anticipated litigation."), and a court may sanction a party who destroys or fails to preserve relevant evidence. *Creative Computing v. Getloaded.com LLC,* 386 F.3d 930, 936–37 (9th Cir.2004); *Medical Lab. Mgmt. Consultants v. American Broad. Cos., Inc.,* 306 F.3d 806, 824 (9th Cir.2002). However, "[a] party should only be penalized for destroying documents if it was wrong to do so, and that requires, at a minimum, some notice that the documents are potentially relevant." *Akiona v. United States,* 938 F.2d 158, 161 (9th Cir.1991), *cert. denied,* 503 U.S. 962, 112 S.Ct. 1567, 118 L.Ed.2d 212 (1992); *see also Shepherd v. American Broad. Co.,* 62 F.3d 1469, 1481 (D.C.Cir.1995) ("A sanction for failure to preserve evidence is appropriate only when a party has consciously disregarded its obligation to do so."). Moreover, a sanction for destruction of evidence is appropriate only if the destruction prejudiced the opposing party. *Ingham v. United States,* 167 F.3d 1240, 1246 (9th Cir.1999); *Dillon,* 986 F.2d at 267.

Here, in response to many document requests, defendant Garber states: "Responding party believes he may have been in possession of further responsive documents, but that these documents were either seized during the raid on CRIS or were discarded when Mr. Garber left Costa Rica." *See,* e.g., Joint Stip. at 63:25–28. Based on this response, and other things, plaintiff argues that defendant Garber was aware of the Canadian court action in which it was appointed Interim Receiver long before defendant Garber left Costa Rica, and, yet "discarded" documents he should have kept; thus, defendant Garber should be sanctioned. *Id.* at 64:9–67:19. In response, defendant Garber argues that most of his documents are available from the Costa Rican Government. *Id.* at 68:5–23. Of course, the Court cannot yet determine whether plaintiff can obtain all the responsive documents from the Costa Rican government that defendant Garber discarded, and, thus, is unable to address plaintiff's claim of spoliation at this time. When discovery is close to being completed, plaintiff may renew its claim for evidentiary sanctions against defendant Garber, and the Court will address the matter then.

**7. Attorney's fees:**

■ Rule 37(a)(4)(A) provides that if a motion compelling disclosure is granted:

> the court shall, after affording an opportunity to be heard, require the party ... whose conduct necessitated the motion ... to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

Fed.R.Civ.P. 37(a)(4)(A).

Here, plaintiff has established that, by seeking to meet and confer with defendant Garber about this motion, it made a good faith effort to obtain disclosure without court action; but, to no avail. Furthermore, defendant Garber's responses were not substantially justified, and he has identified no other circumstances making an award of expenses unjust. Thus, plaintiff's motion for sanctions or attorney's fees should be granted. However, plaintiff has not produced competent evidence supporting its request for attorney's fees in the amount of at least $15,000.00, and without such proof, the Court is unable to set the amount of fees. If plaintiff intends to pursue this request, it should file a declaration or declarations setting forth the exact hours worked by, and the usual hourly fees of, counsel in preparing this discovery motion, as well as proof of any costs incurred, as set forth in the Order below.

### ORDER

1. Defendant Garber shall supplement his documentary responses to plaintiff's first set of requests for production of documents, request nos. 1–194 (except no. 188), no later than thirty (30) days from the date of this Order.

2. Defendant Garber shall provide plaintiff with declarations or affidavits showing the nature of his reasonable inquiry to locate

relevant documents, as detailed in Radiation Survivors, and such declarations should address the nature of the reasonable inquiry for responsive documents on a request-by-request basis, no later than thirty (30) days from the date of this Order.

3. If defendant Garber contends he has provided plaintiff with all documents responsive to a particular discovery request, he shall submit a declaration similar to a Rule 26(g) verification addressing each specific request he contends he has complied with, no later than thirty (30) days from the date of this Order.

4. Defendant Garber shall provide plaintiff an amended privilege log, as described herein, no later than thirty (30) days from the date of this Order. Further, all claims of attorney-client privilege and work product protection shall be supported by declarations discussing items on the log on a document-by-document basis, to be provided to plaintiff contemporaneously with the privilege log.

5. If the supplemental responses to plaintiff do not include documents from nonparties Nextel, Pacific Bell, Elka Bank, Banco de Costa Rica, Bank Hapoalim, Financorp, First Bank of Omaha, Southwest Securities, Union Bank of California, Oceanic Bank & Trust of Bahamas, Offshore Exports, Inc., HSBC Bank, Internal Revenue Service and the California Franchise Tax Board, defendant Garber shall sign releases [7] to those businesses or governmental entities so plaintiff can obtain defendant Garber's documents, no later than thirty (30) days from the date of this Order.

6. No later than twenty (20) days from the date of this Order, plaintiff shall file a declaration or declarations setting forth the hours worked by, and the usual hourly fees of, their counsel in preparing the discovery motion, and proof of any costs incurred, and defendant may file an opposition challenging the reasonableness of the hours or hourly rates and costs, within ten (10) days thereafter. The matter will then be deemed submitted and, pursuant to Local Rule 7.11, decided in Chambers without oral argument.

---

7. Releases for all institutions not located in the United States must be notarized.